JAMES FOUST, Respondent, v. REES LEE et al., Appellants.

St. Louis Court of Appeals, May 25, 1909.

1. **COMMON CARRIERS: Negligence: Receiving Freight in Good Condition.** In an action against a steamboat company for damages caused by the breaking of a leg of plaintiff's horse while being shipped on one of the defendant's boats, it was necessary for the plaintiff to prove, in making out a case, that the horse was in good condition when received by the defendants for shipment; this means in good condition in respect to the leg which was broken.

2. ——: ——: ——: **Prima Facie Case.** And in such case where there was no bill of lading or other written evidence showing the horse was received in good condition, but where it was shown that the horse was in good condition the evening before it was shipped, this, together with the inferences which arise from the fact that the defendant received the horse for transportation, and the manner which must be pursued in loading a horse, is sufficient to make out a *prima facie* case, that the horse's leg was not broken when it was loaded on a boat.

3. ——: ——: ——: **Practice: Demurrer to Evidence: Waiver.** In such case where the defendant's demurrer to the plaintiff's evidence was overruled and the defendant went to trial and endeavored to show that the horse received its injury from being kicked by a companion horse while on boat, such testimony supplied any deficiency there might have been in the plaintiff's testimony in making out a case. Where a defendant, after his demurrer to the plaintiff's evidence is overruled, thus offers evidence on its own behalf, he waives his demurrer to the plaintiff's evidence, to the extent that his own evidence may be considered in aid of it.

4. ————: **Animals: Proper Vice of Animals.** When a shipper delivers animals for transportation to a carrier he takes the risk of injury which may be inflicted upon an animal through the inherent vicious propensity of the others; to that extent the carrier is not an insurer of the animals. In an action against a carrier for injuries received by an animal in transit, the burden is upon the plaintiff to show that the injury was received from some cause other than the proper vice of the companion animals, but very slight proof of negligence is sufficient to sustain this burden and it may be established by circumstances. In such an action proof that the animal was wounded by external violences during transit was sufficient that the jury might infer negligence, in the absence of any explanatory evidence on the part of the defendant.

Appeal from the Pemiscot Circuit Court.—*Hon. Henry C. Riley,* Judge.

AFFIRMED.

*Faris & Oliver* for appellants.

There is not in all the testimony one witness who undertakes to state the condition of the horses when delivered to defendants' steamboat; there is no bill of lading in evidence to show the condition of delivery to defendants, nor any one who saw the horses' condition when delivered. If defendants are liable at all, it is not even sufficient testimony to merely show delivery to defendants in good condition, and a redelivery of the horse in a damaged condition. Hance v. Express Co., 48 Mo. App. 179; Hussey v. Saragassa, 3 Woods (U. S.) 380; Railroad v. Rairdan, 119 Pa. 577. Where proof was made by the carrier (as it was in this case) that the horses were properly loaded, and that the proper care and attention were given them during their transportation, the legal presumption is that any injury sustained by them occurred on account of their inherent vice or nature. Railroad v. Ahels, 60 Miss. 1017; Bigger v. Railroad, 66 Miss. 319; Myrick v. Railroad, 107 U. S. 102; Nugent v. Smith (English Reports), 1

C. P. Div. 423; 5 Am. and Eng. Ency. Law (2 Ed.), pp. 469, *et seq.* The carrier of live stock is no more than the paid agent of the owner to transport his stock, and cannot be, and is not responsible to the same extent as a carrier of inanimate freight. Railroad v. Hedger, 15 Am. Rep. 740; Railroad v. Horand, 23 Ky. Law Rep. 1651, 66 S. W. 25; Railroad v. Wathen, 23 Ky. Law Rep. 2128, 66 S. W. 714.

*Ward & Collins* for respondent.

Respondent having shown by direct, as well as circumstantial evidence, that the horse was received for transportation by appellants in a good condition; was never delivered to respondent but thrown off on the bank one hundred and seventy-five yards below the landing in a damaged and dying condition, and respondent having gone further and shown by facts and circumstances and injury to said horse by human agency causing or concurring to cause the loss or damages complained of, he was entitled to recover. And these facts may be established by circumstantial evidence. Hance v. Express Co., 66 Mo. App. 486; Griffin v. Railroad, 115 Mo. App. 553; Lachner Bros. v. Express Co., 72 Mo. App. 19; Lail v. Express Co., 81 Mo. App. 235; Cash v. Railroad, 81 Mo. App. 109. And on the question of the burden of proof, the rule is well established that "In the event of the loss or injury the burden of proof, after the loss has been shown, is on the carrier, who may show in defense to the action that the loss or injury was due to the proper vice or inherent viciousness of the animal; or that it was due to the negligence of the shipper in failing to discharge a duty with regard to the stock which he had assumed. 5 Am. and Eng. Ency. of Law (2 Ed.), pp. 469, 470; M'cBeath v. Railroad, 20 Mo. App. 445. And this rule of law is supported by the reasoning that "the party who has the care of the property is presumed to know how the injury occurred." Clark v. Railroad, 64 Mo. 448.

NORTONI, J.—This is a suit on the common law liability of the defendants, common carriers, for the value of a horse alleged to have been lost to the plaintiff during its transportation. Plaintiff recovered and defendants appeal.

Defendants are partners owning and operating a line of steamboats known as the Lee Line which ply the Mississippi river between the city of St. Louis, Missouri, and Memphis, Tennessee, and prosecute the calling of common carriers for hire. Plaintiff shipped two horses on defendants' boat, Reese Lee, from the city of St. Louis, to Gayoso, in Pemiscot county, Missouri. One of the horses was delivered at destination in good condition, and the other was removed from the boat with the thigh bone of a hind leg broken and in a dying condition. The horse was without value after its injury and died therefrom within a day or two after landing. The evidence on the part of plaintiff tended to prove that the horse was injured in some manner on the boat prior to reaching Gayoso. No witnesses for them gave testimony, however, as to how it was injured. On the part of defendants, the master of the boat testified that the horse reached Gayoso in good order; that after the freight had been removed from the boat and while several colored men were in the act of leading the horses from the boat to the landing, one of the plaintiff's horses became excited, backed up and kicked the horse in the rear on the leg which resulted in breaking the leg mentioned, and the consequent loss of the horse. The defense relied upon in the trial court and presented here for consideration arises from this testimony, and is to the effect that the plaintiff's horse having received its injury from the vicious propensities of its companion, also owned by the plaintiff, the finding and judgment should be for the defendants. Before considering this matter, however, we will examine defendant's first assignment of error.

This assignment relates to the sufficiency of the testimony tending to show that the horses were received by the defendants, common carriers, in good condition at St. Louis. It is argued that in no event could the plaintiff recover on the presumption, or at least slight showing, of negligence to be hereinafter adverted to, unless it appears that the horse was in good condition at the time it was received by the defendants for transportation. Of course, when considering this argument with reference to the particular facts in judgment, it relates only to the horse being in good condition with respect to the leg which was broken and entailed the loss. There was no bill of lading introduced in evidence nor other receipt for the property. If one was given, it does not appear in the case. The verdict is therefore unaided by any recital which might have been contained therein, as appears in some cases to the effect that the property was received in good order. There appears to have been no witnesses for the plaintiff who testified to having seen the horse loaded on the boat or as to its condition when received. Plaintiff did prove, however, by one witness that he had seen the horse daily or as many as eight or nine times possibly, during the week previous to the shipment, and that he was in first-class condition in every respect during all that time. This witness also testified that he accompanied the horse to the boat landing the evening before it was shipped and that it was then in good condition. When we consider this testimony, together with the inferences which arise from the fact that the defendant received the horse upon its boat for transportation, we entertain no doubt as to its being sufficient to constitute a *prima facie* showing in that behalf. Especially is this true when nothing intervenes tending to show the horse was not in good condition between the time the witness accompanied it to the landing the night before and the time it was received upon the boat. Then, too, when we consider the nature of the injury

and the mode and manner essentially pursued in loading the horse with a thigh bone of a hind leg broken, from the landing, upon the steamboat, a strong inference arises to the effect that the leg was not broken at that time. In view of the fact that in such a condition the horse would have been almost, if not quite, unable to walk upon the boat, it may reasonably be inferred that the leg was not broken when defendants received the horse for shipment. However all of this may be, the defendants did not stand upon its demurrer to the testimony. It proceeded instead, to introduce evidence in its own behalf. While by introducing testimony in its own behalf it did not necessarily waive the demurrer theretofore interposed, the defendants nevertheless assumed the risk of aiding possible insufficiencies in the plaintiff's case by showing such material facts on its part as plaintiff may have omitted. Therefore the question must be determined with reference to the facts appearing at the conclusion of the whole case. [Eswin v. St. L., I. M. & S. Ry. Co., 96 Mo. 290; Storck v. Mesker, 55 Mo. App. 26; Klockenbrink v. St. L. & M. Ry. Co., 172 Mo. 678.] Defendants' witness, the master of the boat, gave testimony to the effect that the horse was in good condition while en route and until it received the injury by being kicked from plaintiff's other horse at Gayoso. Even if the testimony on the part of the plaintiff was insufficient to show the animal was in good order at the time defendants received it for transportation, this feature of the case was abundantly supplied by the defendants' witness, and the assignment of error with respect thereto will be overruled.

The case was tried before the circuit court without a jury. The court granted all of the declarations of law requested by defendants but nevertheless found the issues for the plaintiff. As stated, there was no affirmative proof on the part of plaintiff as to the manner in which the horse received its injury. Although defendants' agent at Gayoso testified that it was in-

jured when the boat arrived at the landing in his charge, and it is to be inferred from the testimony that the injury had been received a considerable time theretofore for the reason, he said the horse was then in a dying condition. The injured limb was much swollen, etc. The clerk of the boat stated that the horse was in a dying condition when the boat reached Gayoso. The clerk reported this fact to defendants' agent immediately upon landing and before any of the cargo was removed. It appears the boat remained at the landing from thirty minutes to an hour unloading other freight before the horse was removed. The boat then moved about two hundred yards farther down the river and plaintiff's horse was dragged therefrom upon the bank in his crippled condition. On the part of the defendants, the captain's evidence is to the effect that the horse was in good condition upon arriving at Gayoso and received the kick from its companion while being led from the boat. It is very true that the obligation of a common carrier as insurer does not obtain with respect to the transportation of animals against injuries received by them from their natural and vicious propensities. And indeed, when one shipper is transporting several animals, he takes the risk as well of injuries which may be inflicted upon one animal by the inherent vicious propensities of the others. [L. M. O. & T. Ry. Co. v. Biger, 66 Miss. 319; Boehl v. Railroad, 44 Minn. 191, 46 N. W. 333; 1 Hutchinson on Carriers (3 Ed.), 336.] And there is no doubt, if it appears conclusively that the plaintiff's horse was injured by the vicious propensities of its companion in kicking, the defendants should be acquitted of liability therefor. It is true no witness positively disputed the captain's statement with respect to this matter. Nevertheless if the horse received his injury in this manner, then he was sound and in good order when the boat arrived at Gayoso an hour before and there is an abundance of evidence to the effect that the horse was injured some

Foust v. Lee.

time during transit before the boat arrived at Gayoso and that he was then in a dying condition. Now this question was for the court who tried the facts. The court granted to defendants' declarations of law incorporating the principle which would exculpate them from liability on the theory of injury received by the proper vice of the companion horse, and evidently found the fact to be that the horse was injured in a manner otherwise than stated by the captain, or that it received its injury during the transit and before the boat arrived at Gayoso landing. But it is argued that no sufficient showing was made by the plaintiff's proof to that effect. It is very true that in view of the exception as to the carrier's liability with respect to the proper vice of the animal or its companion, the burden rests with the plaintiff to show *prima facie* the animal received its injuries through some cause other than its proper vice or the vicious propensities of the companion horse. However, very slight proof of negligence is sufficient in such cases. This, for the reason that the animal being in the possession of the carrier for transportation, it is difficult, and in many cases impossible, for the shipper to show precisely how the injury was received. It is certainly not necessary to show that the injury was inflicted through the carrier's negligence or want of care, by express and positive testimony. The cause of the injury may be established from collateral facts and circumstances affording a reasonable inference of negligence, identically as other facts may be established in a suit at law. [Libby v. St. L., I. M. & S. Ry. Co., 137 Mo. App. 276, 117 S. W. 659; Hance v. Pacific Express Co., 48 Mo. App. 179; Cash v. Wabash Ry. Co., 81 Mo. App. 109; Hance v. Pacific Express Co., 66 Mo. App. 486; 5 Am. and Eng. Ency. Law (2 Ed.), 469, 472.] Where the liability sought to be enforced is that at common law, a *prima facie* case of negligence or breach of duty in respect of the transportation of animals will arise from showing that the ani-

mal was wounded as by external violence during transit, and thus evince a physical condition which does not usually attend a carriage with due care and attention. From this showing a jury is authorized to infer and may find negligence. Authorities supporting the proposition are abundant. [Hussey v. The Sarargossa, 3 Woods (U. S.) 380; Libby v. St. L., I. M. & S. Ry., 137 Mo. App. 276, 117 S. W. 659; Cash v. Wabash Ry. Co., 81 Mo. App. 109; Hance v. Pacific Express Co., 48 Mo. App. 179; Hance v. Pacific Express Co., 66 Mo. App. 486; Lachner Bros. v. Adams Ex. Co., 72 Mo. App. 13, 19; 5 Am. and Eng. Ency. Law (2 Ed.), 469, 471.] For a case extending the doctrine to its limit, see Griffin v. Wabash R. Co., 115 Mo. App. 549.

There was an abundance of testimony on the part of plaintiff tending to prove that the horse received its injury from external violence and was in a wounded and dying condition at the time the boat arrived at Gayoso. This feature of the case was wholly unexplained by the defendants. In fact, they introduced no evidence whatever to show how the horse received its injury prior to arriving at Gayoso. The testimony given on the part of the defendants goes exclusively to the effect that the horse was injured an hour after the boat landed. How and when it was injured, was purely a question of fact for the court trying the case as a jury. [Lachner Bros. v. Adams Express Co., 72 Mo. App. 13, 19.] By instructions given at the request of defendants, the court afforded them the benefit of all pertinent principles of law heretofore discussed. No instructions were given for plaintiff.

The judgment was for the right party and should be affirmed. It is so ordered. *Reynolds, P. J.,* and *Goode, J.,* concur.